Opinion delivered June 29, 1888.

---

No. 5635.

## Obe Cooksie v. The State.

1. Agency—Embezzlement—Evidence—Charge of the Court.—The proof in this case clearly establishing the agency of the accused with respect to the alleged embezzled property, the charge of the trial court upon the subject (for which see the statement of the case) was correct.
2. Evidence—Bill of Exceptions.—The principal witness for the prosecution was asked by the defense, on cross examination, if she was not the mistress of the alleged injured party, which question was not allowed by the trial court. The bill of exceptions reserved to this ruling fails to show that the accused intended or expected to elicit an affirmative answer, and was, therefore, insufficient and too indefinite to bring the question in review.

3. STANDARD OF VALUE—CHARGE OF THE COURT.—Second hand c'o'h-
ing has no such market value as will represent an actual value in deter-
mining the grade of the offense of theft of such property. Nor can
the rule obtaining among dealers in second hand clothing "to sell for
fifty per cent less than original cost" furnish anything like a just stand-
ard of value. See the statement of the case for a charge of the court
*held*, under this rule, to be correct.

4. SAME—PRIVILEGE OF COUNSEL.—See the opinion for remarks used in
argument by the counsel for the State and *held* to have been an abuse
of the privilege of argument, and for a charge upon the question re-
quested by the defense, the refusal to give which is material error.

APPEAL from the District Court of Grayson. Tried below
before the Hon. H. O. Head.

The appellant was indicted September 30, 1887, for the em-
bezzlement on April 12, 1887, of a valise and its contents, con-
sisting of various items of second hand clothing, of the alleged
value of thirty-four dollars and seventy-five cents, and charged
to have been the property of one Cæsar Moore. The indict-
ment contained two counts, the first of which charged that ap-
pellant was at the time the agent and employe of one Cæsar
Moore, a private person, the alleged owner, and that at the time
the property came into the possession and was in the care of ap-
pellant by virtue of his said agency. The second count alleges
that appellant was the agent of one Rhoda McMurray, a private
person, and that he, without the consent of the owner, con-
verted the property of Cæsar Moore, and that the property had
come into the possession of the appellant, and was in his care
by virtue of his said agency. A general verdict of guilty was
returned against the appellant, assessing against him a term
of two and a half years in the penitentiary as punishment.

Rhoda McMurray was the first witness for the State. She
testified, in substance, that she lived in Gainesville, Cooke
county, Texas. Some time during the month of April, 1887,
Mrs. Williams, a colored woman who lived in that town and
with whom Cæsar Moore, the prosecuting witness, had been
boarding for some time, told witness that the said Cæsar had
gone to Dallas, and that on his departure he directed her to tell
the witness to collect his clothes and take or send them either
to him or his wife, Millie Moore, in Dallas. The witness there-
upon collected such clothes as the said Moore had in Gaines-
ville and Sherman, consisting of the articles named in the in-
dictment, packed them in Moore's old valise, and for the time

being deposited the valise at the house of her mother, in Sherman. When ready to go back to Gainesville she requested the defendant, who was then living at her mother's house, to take the valise to the express office and express it for her either to Cæsar Moore or his wife Millie, at Dallas. Defendant promised to do so, and witness went to Gainesville. Returning to her mother's house in Sherman, a day or two later, she found that the valise had not yet been removed, and asked the defendant why he had not expressed it, as he promised. He replied that he had forgotten to do so, but would take it to the office and express it at once. The witness then gave him the valise, repeating her direction to express the valise to "Cæsar Moore or Millie Moore," at Dallas, Texas. He went off in the direction of the express office in Sherman, with the valise, and when he returned said, in reply to the witness's question about the valise, that it was "all right," and that he had "expressed it as directed." The defendant knew that the valise and contents were the property of Cæsar Moore.

After this transaction the witness went back to Gainesville, and thought no more about the matter until about a month later, when she received word from Cæsar Moore asking why she had not attended to the forwarding of his valise and clothes. Witness sent Moore word in reply that she had the valise and clothes expressed to him some time before. A short time afterwards Moore, hunting his clothes, came to the house of the witness's mother in Sherman and made inquiry for them. Witness told him that she collected his clothes, packed them in the old valise, and gave the valise to the defendant with directions to express them to him, Moore, or his wife in Dallas. Witness then sent to the express office in Sherman and made inquiries about the valise, but failed to trace it. The witness put into that valise five flannel overshirts, one suit of flannel underwear, one undershirt, two pair of cotton flannel drawers, one percale shirt, one odd gold cuff button, three pairs of socks, one coat and vest, one knit jacket, two pairs of pants and one pair of overalls. The overshirts and underwear looked new, the cuff button looked to be of gold, the socks were good, and the percale shirt was a fine shirt. The remaining clothes were old, and the valise was old and worn.

Cross examined, the witness said that on her return from Gainesville, when she found the valise still at her mother's house, she did not unpack it to see that all of the articles she

put in it were still there, but when she handed the valise to defendant just before he took it off, she opened it and saw that nothing inside had been disturbed since she packed it. Other parties besides the defendant were staying at the house of the witness's mother during the time the valise was kept there. At this point the witness was asked by the defense if, at the time of the alleged embezzlement, she was not the mistress of Cæsar Moore. Upon objection by the State the question was ruled out by the court.

Cæsar Moore was the next witness for the State. He testified that his residence was in Dallas, Texas. About December 1, 1886, he left Dallas and went to Gainesville, where he entered into the service of the railroad, being employed on the track, taking up old ties and putting in new ones, and removing old rails and laying down new ones. About Christmas the witness purchased some new clothing, consisting of five heavy flannel overshirts, one suit of underwear (shirt and drawers), one undershirt, two pairs of cotton flannel drawers, one fine shirt, three pairs of socks, a pair of pants, and a pair of cuff buttons. A white man gave the witness an old valise and a pair of checked pants. Some time in February or March, 1887, the witness heard that the officers had warrants to arrest him for gambling, and he told the defendant that, in view of that fact, he might decide to leave Gainesville and go to Taylor to avoid arrest. Defendant replied: "If you go, I will go too." Witness then told defendant that if he had to leave Gainesville he wanted defendant to collect his clothes and bring them to him at Taylor, when he and Rhoda McMurry should go to that town, or, if he, defendant, should not go to Taylor, to send them to him. He also told defendant that, instead of going to Taylor, he might go to Dallas. Defendant then said that, going to Taylor, he would go by Dallas, and if witness was then in Dallas he would see him there. Some time after this, the section boss under whom witness was then at work confirmed the report that the officers had warrants from Dallas for witness's arrest for gambling, and witness decided to go to Dallas and plead guilty. Accordingly, witness went to his boarding house, kept by Mrs. Williams, colored, and directed her to tell Rhoda McMurray to collect his clothes and send or take them to him or his wife, Millie Moore, at Dallas. Witness then went to Dallas. After some time, failing to get his clothes, witness sent an inquiry to Rhoda McMurray, about them, and Rhoda

replied that she sent them by express some time before. Search through each of the express offices in Dallas failed to trace the valise or clothes. Witness then went to Sherman to see Rhoda about them. He found Rhoda at her mother's house. Witness then looked through every express office in Sherman. The agents in each office carefully examined their store rooms and books, and reported that no valise had ever been shipped by defendant to witness or his wife Millie Moore. Witness then swore out a complaint against the defendant for the embezzlement of the property.

For the five heavy flannel overshirts mentioned by the witness he paid two dollars and fifty cents each. The county attorney at this point asked the witness what the said shirts were worth, to which question the defense objected, upon the ground that the market value, if there was such, for such property, was the proper measure of value, and the witness had not yet stated that there was a market value for such property. In reply to the question whether there was a market value for such articles at Sherman, the witness replied that he did not know. The county attorney repeated his question as to the value of the five shirts, and the witness replied that they were worth to him, and to anybody, what he gave for them, two dollars and fifty cents each, and that the suit of underwear was worth to him, and to anybody, the sum of five dollars, which was what he paid for them, the said articles, when embezzled, being as good as new. The witness then, over the objection of defendant, stated the other articles as alleged in the indictment, the whole aggregating the sum of thirty-four dollars and seventy-five cents. The defense again excepted to all of the the testimony as to value, upon the ground that the market value of the said articles was the true measure of value, and offered to prove that such articles had a market value, but the objection was overruled. Witness never consented for the defendant to appropriate the value of any of the articles to his own use.

On his cross examination the witness said that the conversation between himself and defendant about leaving Gainesville and going to Taylor, etc., as detailed by the witness on his direct examination, occurred a short time before the witness left Gainesville. Witness did not leave word with Mrs. Williams, in Gainesville, for defendant to collect the clothes and express them. He left that word with Mrs. Williams for

Rhoda McMurray. Witness testified, on the examining trial, that when he left Gainesville he told defendant to collect his clothes and bring them to him at Taylor when he (defendant) and Rhoda should go there. He did not think that he swore to a written statement of his evidence on the examining trial. He was under the rule and did not hear the argument of counsel on the examining trial of the defendant. Witness was here shown his written statement taken before the examining trial, and was asked if he made that statement, signed and swore to it. He replied that he could neither read nor write. He was then asked if the county attorney did not write down his statement as he made it on that trial, and read it over to him, and if he did not then sign and swear to it. He replied that he had no recollection about that matter. The defendant's counsel then read from the witness's said written statement, and asked if he stated as follows:

· "I left Gainesville pretty lively, because there were some officers after me for gaming in Dallas. I left some of my clothes in Gainesville with Mrs. Williams, a colored woman who lived east of the depot. I left them there for Rhoda McMurray to get and bring to Sherman and express them to me at Dallas, or if she and Obe Cooksie came to Taylor, to bring them. I have been in Dallas ever since. I never gave defendant Cooksie my consent to appropriate my clothes or property, and I have never given any one my consent to take them except, as above stated, to send to me." The witness replied: "I do not think I made any such statement."

On further cross examination the witness said that when he had the conversation with defendant, detailed above, he contemplated going to Taylor, and it was understood that defendant would follow him with his clothes. Witness then explained to defendant that, incumbered with his valise, he could not well escape the officers, and to the extent of forwarding his clothes defendant agreed to aid the witness in his escape. Witness had never seen the defendant in possession of any of the alleged embezzled property, and had never talked to him about it, nor asked him about it.

Horace Grant testified, for the State, that he lived at the house of his mother in Sherman, and that Rhoda McMurray was his sister. Early in April, 1887, Rhoda came to witness's mother's house, having an old valise in her possession. Witness saw her give that valise to the defendant, and heard her

tell him to express it to "Cæsar Moore, or Millie Moore," at Dallas. Defendant took the valise off, since which time the witness had not seen it. Cross examined, the witness said the defendant remained at his mother's house for some time after he took the valise off to express it. During the whole of that time he wore the same clothes that he wore before he undertook to express the valise. Witness never saw him in possession of any of Cæsar Moore's clothes.

Burrill Lockett testified, for the State, that early in the spring of 1887, soon after defendant came to Sherman from Gainesville, he brought an old dark brown valise to the witness's blacksmith shop in Sherman, and asked permission to leave "my valise" for a while. He soon returned and got it, and then took it to witness's house, where it remained for several days. Prior to that time witness had always seen the defendant transport his clothing in an old sack. Witness did not open the valise, but it appeared to be filled with something and was heavy. Defendant, after some days, removed the valise from witness's house and witness had not seen it since. He had never seen any of the articles mentioned in the indictment in the possession of the defendant. He brought the valise to the shop and took it away from the house in the day time.

Constable S. E. Wright testified, for the State, that when he arrested the defendant he warned him that he need not make any statement unless he wanted to, and that any statement he made could be used against him; and then asked him what he did with the valise. He replied that he took it to the express office to express to Dallas, but that the express officials refused to send it without prepayment of expressage, and, as he had no money, he put the valise down by the express office door and went off, and that he never went back nor ever saw the valise again.

The State introduced the defendant's voluntary written statement, as made on the examining trial, as follows: "Rhoda McMurray requested me to take a valise from her mother's house in Sherman to the express office, and, not finding the agent in at the time, I sat it down inside the office and left it there. Never returned to the express office any more."

Warren Sacra testified, for the State, that he lived in the country north of Sherman. Defendant worked in the neighborhood. When he finished that job witness went to where he

was staying and told him where he could get work. Witness saw at that place an old dark brown valise, which valise defendant took away when he left the neighborhood. Witness never saw Moore's valise unless that was it. He never saw defendant in possession of any of the articles enumerated in the indictment.

The officials of the Wells-Fargo express company testified that the records of the Sherman office of that company did not show the shipment of a valise from Sherman to Cæsar or Millie Moore at Dallas. Ordinarily the books show shipments, but it occasionally happened that the record of a shipment was omitted by accident. Travelers frequently deposited their valises in the express office while awaiting trains, and it was possible that a person might take another person's valise from the office by mistake, but such a mistake had never come to the knowledge of the witnesses.

It was agreed that Millie Moore would testify, if present, that she never received the valise and clothes described in the indictment, and knew nothing about them.

The State closed.

Two witnesses for the defense testified that they were or had been dealers in second hand goods in Sherman, Texas. Each testified that in April, 1887, there was a regular market in Sherman for such articles as those described in the indictment. Ordinarily, the character and condition of second hand clothing fixed its price, and as a rule it ranged from twenty to fifty per cent of the original cost. Estimating the value of the articles named in the indictment upon the testimony of the witness Cæsar Moore, the witnesses thought they were worth about twelve dollars, but not in excess of fifteen dollars.

Sam and Cassandra Welch testified, for the defense, that the defendant came to their house in Sherman on Christmas day, 1886, having in his possession an old dark brown valise. They saw the same valise in his possession in the Spring of 1887. It then appeared to be full of something, but was not very heavy.

Ella Cooksie testified, for the defense, that she was married to the defendant in June, 1887. He then had a new black valise. Witness was often with him during the several months preceding the marriage, and never saw him with any other valise. She had never seen him in possession of any of the articles mentioned in the indictment.

The charge of the court referred to in the first head note reads as follows: "In deciding as to whether or not the defendant was the agent of Cæsar Moore, within the meaning of the foregoing charge, you are instructed that if you believe from the evidence that said Moore told defendant to get said articles and bring them to him, and also told one Mrs. Williams to have Rhoda McMurray to get them and bring or send them to him or his wife, and that said McMurray, in compliance with said instructions, did get into her possession said articles and deliver them to the defendant for him to send by express to said Moore, or to his wife for him, at Dallas, and that defendant so received into his possession said articles, agreeing with said McMurray so to send them to said Moore, or to his wife for him, you will find the defendant to have been such agent."

The charge of the court referred to in the third head note reads as follows: "If you believe from the evidence that the defendant is liable under the charge given you, for the embezzlement of any of the articles described in the indictment, you are instructed that in arriving at the value of such articles, and thereby fixing the punishment of the defendant, you will be governed by what, if anything, you believe from the evidence was the fair and reasonable value of such articles at the time and place they were so embezzled."

The motion for new trial raised the questions discussed in the opinion.

*Brown, Gunter & Bliss*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

Hurt, Judge. This conviction is for embezzlement. It is very clearly shown that appellant was the agent of Cæsar Moore, as alleged in the indictment; hence the charge of the court upon this branch of the case was correct.

Rhoda McMurray was an important witness for the prosecution. Appellant asked witness if she was not the mistress of Cæsar Moore. To this question the county attorney objected, which objection was sustained, and appellant excepted. The bill of exceptions fails to show that appellant proposed or expected to prove the fact, or that such was the fact. The bill shows the purpose of the evidence, but it does not appear that

appellant proposed or expected to prove the fact, only as such purpose may appear from the question itself. This is not sufficient, and hence we can not revise this matter. If properly presented, we would be inclined to hold that under the facts of this case the fact would be admissible.

The ruling and charge of the court with reference to the proof of the value of the property embezzled were correct, when considered with reference to the character of the goods (second hand clothing). This character of property (second hand clothing), in the nature of things, has no such market value as would or could reasonably represent its actual value; nor could the rule obtaining among dealers in second hand clothing, "to sell for fifty per cent less than original cost," furnish anything like a just standard of value. (I. & G. N. Railway Co. v. Nicholson, 61 Texas, 550.)

Under the evidence the value of the property charged to have been embezzled was of the highest importance, there being a serious conflict as to its value. If its value was twenty dollars or over, it was a felony; if under twenty dollars, a misdemeanor.

In argument to the jury, counsel for the State asked the jury the following question: "Gentlemen of the jury, will you find the value of the property to be over twenty dollars, and send him to the penitentiary, where he ought to be, or under the value of twenty dollars, and put the county to the expense of keeping him in jail?"

If appellant embezzled property of the value of twenty dollars or over he ought to be in the penitentiary. If the property embezzled was not of the value of twenty dollars, he ought not to be in the penitentiary, the expense to Grayson county in keeping him in jail notwithstanding. And in passing upon the value of the property, if the jury had placed these expenses to their county in the scales against the defendant, a great wrong would have been perpetrated, not alone to the defendant, but to the majesty of the law as well.

Such character of argument (this is a misnomer) is wrong, and was evidently injurious to appellant. Counsel for appellant, to break its force, extract its sting, requested this charge: "If you find the defendant guilty, then in assessing the penalty or the degree of guilt, you are instructed to disregard entirely the consideration of the expense to the county by reason of the confinement of the defendant in the county jail."

The remarks of counsel for the State rendered this or one of the same substance necessary, and it should have been given; and its refusal under the facts of this case is reversible error. The judgment is reversed and the cause remanded.

*Reversed and remanded.*